1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JELANI KITWANA HOWARD,

11             Petitioner,                No. CIV 2:09-CV-0149-KJM-JFM (HC)

12      vs.

13   MATTHEW CATE,

14             Respondent.               FINDINGS & RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner represented by counsel and proceeding with a

17   petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2002

18   conviction on charges of murder, attempted murder, two counts of corporal injury on a

19   cohabitant and one count of assault with a deadly weapon, enhanced by findings of personal use

20   of a firearm.  This action is proceeding on two claims raised in an amended petition filed

21   November 20, 2009.

22                        PROCEDURAL BACKGROUND

23          On February 21, 2000, petitioner was arrested for incidents occurring on two

24   separate days.  See Clerk's Transcript ("CT") at 326.  The first incident occurred in October

25   1999 and resulted in formal charges filed in case No. 99F10330 in the Sacramento County

26   Superior Court.  See CT at 184-86.  The second incident occurred in February 2000 and resulted

1  in formal charges filed in case No. 00F01412, also in the Sacramento County Superior Court.

2  See id. at 92-95.

3          On March 8, 2001, the People moved to amend and consolidate the two cases on

4  the ground that the crimes enumerated in each Information were different offenses of the same

5  class of crimes within the meaning of California Penal Code section 954.  CT at 6; 92-95.  The

6  motion was granted on March 8, 2011.  Id. at 6.

7          On December 6, 2001, jury trial commenced with the filing of motions in limine,

8  including petitioner's motion to sever counts, which the People opposed.  CT at 132-40; 164-69.

9  Oral argument was held on the motion to sever on December 19, 2001.  See Reporter's

10 Transcript ("RT") at 37-40.  On December 20, 2011, the trial court denied the motion on the

11 ground that "good cause for severance has not been shown."  See RT at 79-81.

12         On January 14, 2002, jury selection commenced.  See RT at 104.  Also on

13 January 14, 2002, petitioner was charged by a second consolidated / amended information with

14 five counts stemming from the two incidents: one count of murder, in violation of Cal. Penal

15 Code section 187, with a further allegation of intentional and personal discharge of a firearm

16 causing great bodily injury; one count of attempted murder, in violation of Cal. Penal Code

17 § 664/187(a), with a further allegation of intentional and personal discharge of a firearm causing

18 great bodily injury; two counts of corporal injury on a cohabitant, in violation of Cal. Penal Code

19 § 273.5(a); and one count of assault with a deadly weapon, in violation of Cal. Penal Code

20 § 245(a)(1).  CT at 182-86.  The information also alleged that petitioner suffered a prior

21 conviction in 1993 for assault with a firearm, in violation of Cal. Penal Code § 245(a)(2).  Id. at

22 186.

23         Jury deliberations began on January 31, 2002.  CT at 194.  On February 4, 2002,

24 the jury returned guilty verdicts on all five counts.  See CT at 256-58.  On March 29, 2002,

25 petitioner was sentenced to 27 years in determinate sentencing and four consecutive 25-year to

26 life terms.  CT at 327-30.

1    On April 3, 2002, petitioner filed a notice of appeal.  CT at 331.

2    On February 20, 2003, the California Court of Appeal, Third Appellate District,

3    affirmed the conviction, but remanded the matter for resentencing.  <u>See</u> LD 1 and 2.

4    On March 25, 2003, petitioner filed a petition for review with the California

5    Supreme Court.  LD 3.  On April 30, 2003, the petition was summarily denied.  LD 4.

6    On December 19, 2003, petitioner was resentenced.  <u>See</u> CT at 5.  Petitioner's

7    sentencing issues were appealed twice more but are not relevant to the grounds raised in the

8    instant petition.  <u>See</u> Am. Pet., Exs. A-C; <u>People v. Howard</u>, 2006 WL 2912544 (Cal. Ct. App.

9    2006).

10    On April 10, 2007, petitioner filed a timely petition for writ of habeas corpus in

11    the Sacramento County Superior Court.  <u>See</u> Am. Pet., Ex. D.  Petitioner's claims concerned his

12    sentencing and not the two claims presented in the instant petition.  <u>See id.</u>  On May 9, 2007, the

13    superior court denied the petition.  <u>Id.</u>, Ex. E.

14    On June 4, 2007, petitioner appealed to the California Court of Appeal, Third

15    Appellate District.  <u>See</u> Am. Pet., Ex. F.  On July 5, 2007, the appellate court summarily denied

16    the petition.  <u>Id.</u>, Ex. G.

17    On August 6, 2007, petitioner appealed to the California Supreme Court.  <u>See</u>

18    Am. Pet., Ex. H.  On February 13, 2008, the petitioner was summarily denied.  <u>Id.</u>, Ex. I.

19    On January 15, 2009, petitioner filed a petition for writ of habeas corpus in this

20    court asserting four grounds for relief.  Also on January 15, 2009, petitioner filed a motion to

21    stay and abey the petition pending exhaustion of two unexhausted claims.  On September 23,

22    2009, respondent filed an opposition to the application for abeyance.

23    On August 10, 2009, respondent filed an answer to the mixed petition.

24    On October 9, 2009, the undersigned issued findings and recommendations

25    recommending that the motion to stay and abey be denied.  On October 29, 2009, the Honorable

26

1    Garland E. Burrell[1] adopted the findings and recommendations and directed petitioner to file an

2    amended petition raising only exhausted claims.

3            On November 20, 2009, petitioner filed the instant amended petition setting forth

4    two claims for relief: (1) the trial court violated petitioner's due process rights and right to a fair

5    trial by admitting irrelevant and prejudicial 'other crimes' evidence and (2) the trial court's

6    refusal to sever counts denied petitioner his right to due process, right to a fair trial and right to a

7    trial by an unbiased jury.  Upon review of the amended petition, respondent filed a response on

8    December 21, 2009 stating that because the amended petition did not set forth new claims, an

9    amended answer would not be filed.  On January 4, 2010, petitioner field a traverse.

10                                        FACTS[2]

11            [Petitioner] met Sandra Smith in July 1999 and began living with her in
     her apartment not long after.  In October 1999, after she decided she no longer
12   wanted to live with him, Smith took [petitioner]'s things to his mother's house,
     then told him he could come by to get his computer.  When [petitioner] came by,
13   he became upset when he discovered Smith had recently called another man.
     [Petitioner] came downstairs with a baseball bat to where Smith and her brother
14   were sitting on the couch, and after telling Smith's brother "you better not get in
     my business," he started swinging the bat.  He struck Smith's brother on the arm
15   with the bar, then starting punching Smith when she grabbed the bat.  During the
     melee, Smith's head struck the entertainment center, and [petitioner] bit off the tip
16   of her brother's thumb.

17            Four months later, in February 2000, [petitioner] was living with another
     woman, Aretha Armstrong.  On February 19, [petitioner] and Armstrong argued
18   while walking back from a store because [petitioner] believed Armstrong was
     cheating on him. [Petitioner] became very angry and tried to hit Armstrong on the
19   head with a bottle of brandy.  She managed to block the blow with her arm and
     suffered a swollen wrist.  As the argument continued, [petitioner] struck
20   Armstrong in the eye with his fist and choked her.

21            As they continued walking, they encountered a friend of Armstrong, who
     took Armstrong home, then drove her to the home of her best friend, Kelly Clark.
22   As Armstrong was getting in her friend's car, [petitioner] was very mad and told

23

24       [1] On January 21, 2011, this matter was reassigned from Judge Burrell to the Honorable
     Kimberly J. Mueller.  See Doc. No. 30.

25       [2] The facts are taken from the opinion of the California Court of Appeal for the Third
26   Appellate District in People v. Jelani Kitwanna Howard, No. C041099 (Feb. 26, 2003), a copy of
     which is lodged as Lodgment 1, filed August 24, 2009.

                                            4

Armstrong he would "bear [her] ass in front of everybody."

Later that night, [petitioner] came to Clark's apartment looking for Armstrong. A confrontation ensued, during which [petitioner] fired a gun a number of times, killing Clark's boyfriend, Lamonte Hammond, and wounding another occupant of the apartment, Chico Stokes.

[Petitioner] was originally charged in two separate cases, one based on the events in October 1999 (case No. 99F10330) and one based on the events in February 2000 (case No. 00F01412). In March 2001, the court granted the People's motion to consolidate the cases. On the first day of trial in December 2001, [petitioner] moved to sever the cases, but the court denied the motion, finding "good cause for severance has not been shown."

[Petitioner] testified at trial and admitted hitting Smith's brother with a bat and biting his thumb. He also admitted shooting Hammond and Stokes, although he claimed he shot them in self-defense after grabbing Hammond's gun.

The jury found [petitioner] guilty of first degree murder in the shooting of Hammond, attempted murder in the shooting of Stokes, inflicting corporal injury on a cohabitant or former cohabitant for striking Smith and Armstrong, and assault with a deadly weapon for hitting Smith's brother with a bat. The trial court found [petitioner] had suffered a prior serious felony conviction for assault with a firearm. The court sentenced [petitioner] to an aggregate prison term of 127 years to life.

People v. Howard, slip op. at 2-4.

### STANDARDS FOR A WRIT OF HABEAS CORPUS

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different

1  result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

2  (2000)).

3  Under the  "unreasonable application" clause of section 2254(d)(1), a federal

4  habeas court may grant the writ if the state court identifies the correct governing legal principle

5  from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

6  prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

7  simply because that court concludes in its independent judgment that the relevant state-court

8  decision applied clearly established federal law erroneously or incorrectly.  Rather, that

9  application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

10  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

11  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

12  The court looks to the last reasoned state court decision as the basis for the state

13  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

14  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

15  habeas court independently reviews the record to determine whether habeas corpus relief is

16  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

17                                   ANALYSIS

18  1.     Prior Crimes Evidence

19  Petitioner's first ground for relief argues that the trial court violated his due

20  process rights and right to a fair trial when it admitted evidence of two prior crimes.

21         A.     State Court Opinion

22  The last reasoned state court rejection of this claim is the decision of the

23  California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The

24  state court of appeal addressed the claim as follows:

25         Before trial, the People sought permission from the court to introduce
       evidence of two gang-related, drive-by shootings in which [petitioner] allegedly
26     had been the shooter, one in 1992 and one in 1995, to rebut any claim of self-

defense or imperfect self-defense in the present case.  The People contended the earlier shootings were admissible under Evidence Code section 1101, subdivision (b), to show intent or a common plan or scheme.  In turn, [petitioner] moved to exclude the evidence on the grounds it was irrelevant and prejudicial.  The court held the evidence could be admitted in rebuttal if [petitioner] testified, finding it was "relevant information the jury should be allowed to consider in determining the believability of the [Petitioner]'s assertions that he was acting in self-defense in this case" and that "the probative value of the [Petitioner]'s prior acts of aggression would substantially outweigh the prejudicial effect."

During his testimony about the February 2000 incident, [petitioner] claimed the occupants of Clark's apartment appeared to be associated with the Crips gang.  (He later testified he had been a member of a rival gang.)  He testified that the shooting occurred when he grabbed a gun from Hammond, then shot Hammond and Stokes with it when they started coming toward him.

[Petitioner] also testified that he pled guilty to a charge of assault with a deadly weapon in 1993.  During his direct testimony, he testified about the event underlying the conviction, which occurred in 1992.  [Petitioner] claimed he was in his mother's car with three other individuals, including his cousin Kevin, who was driving, when Kevin shot at the occupant of another car.  [Petitioner] also testified that in 1995 he was arrested for being the shooter in another incident, but the shooter was actually a relative of his and the charge was dismissed.

In their rebuttal case, the People offered the testimony of various witnesses in an attempt to show [petitioner] was the shooter in the 1992 and 1995 incidents.  The success of that attempt is debatable, however, because the People's witnesses were largely uncooperative.

Before the hearing on the rebuttal witnesses, the jury was instructed as follows: "You are about to hear evidence that the [petitioner] may have committed crimes other than that for which he is on trial.  This evidence, if believed, may not be considered by you to prove that the [petitioner] is a person of bad character or that he has a disposition to commit crimes. [¶]  It may be considered by you only for the limited purpose of determining if it tends to show the existence of the specific intent which is a necessary element of the crimes charged in Counts One and Two, whether the [petitioner] had an actual belief in the necessity to defend himself, or whether the [petitioner] had an actual and reasonable belief in the necessity to defend himself. [¶] . . . [¶] You are not permitted to consider such evidence for any other purpose."

[Petitioner] contends the admission of evidence on the 1992 and 1995 shootings "was error in violation of Evidence Code sections 1103, 352, and 210, and that it created a fundamentally unfair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution."  We disagree.

A

Evidence Code sections 1101 and 210

Under subdivision (a) of Evidence Code section 1101, character evidence,

"whether in the form of an opinion, evidence of reputation, or evidence of specific instances of . . . conduct," is generally inadmissible when offered to prove conduct on a specified occasion. However, under subdivision (b) of that statute, evidence of a persons' prior acts may be admissible "when relevant to prove some fact . . . other than his or her disposition to commit such an act," including "intent." (Evid. Code § 1101, subd. (b).)

When evidence of prior conduct is offered to prove intent, a lesser degree of similarity between the prior conduct and the charged conduct is necessary than when the prior conduct is offered to prove a common design or plan or identity. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "'[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant'" probably harbor[ed] the same intent in each instance."'" (*Ibid.*)  "The inference to be drawn is not that the actor is *disposed* to commit such acts; instead, the inference to be drawn is that, in light of the first event, the actor, at the time of the second event, must have had the intent attributed to him by the prosecution." (*People v. Robbins* (1988) 45 Cal.3d 867, 879.)

Evidence that [petitioner], not acting in self-defense, committed two earlier gang-related shootings had at least *some* tendency in reason to disprove [petitioner]'s claim of self-defense in this case. (See Evid. Code, § 210 [defining "relevant evidence"].)  "That is all that Evidence Code section 210 requires." (*People v. Rowland* (1992) 4 Cal.4th 238, 260.)  That the shootings occurred several years earlier might have reduced their probative value somewhat. Contrary to [petitioner]'s argument, however, it id not render them completely irrelevant.

To a large extent, [petitioner]'s challenge to the relevance of the prior crimes evidence is based on the testimony actually elicited from the uncooperative witnesses in the People's rebuttal case, rather than on the offer of proof on which the trial court based its ruling.  The problem with this approach is that it predicates a claim of trial court error on information that was not before the court when the court made the ruling now under review.  The trial court rules on the admissibility of the prior crimes evidence before trial, based on the People's offer of proof, rather than on the testimony of the witnesses as later elicited at trial. FN3.  When that different testimony was elicited, [petitioner] did not object. The only ruling made, and thus the only one we can review, is the one the trial court made based on the offer of proof before trial.  Based on that offer of proof, there was sufficient evidence for the jury to determine [petitioner] was the shooter in both incidents and was not acting in self-defense which was relevant to [petitioner]'s claim of self-defense in this case.

FN3 [Petitioner] did not request a hearing under Evidence Code section 402 so that the trial court could rule based on the actual testimony of the proposed witnesses.

B

Evidence Code section 352

As for [petitioner]'s argument that the court erred in failing to exclude the evidence under Evidence Code section 352, we disagree.

Evidence Code section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) A court's exercise of its discretion under Evidence Code section 352 is not a ground for reversal unless the court acted in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*Id.* at pp. 1124-1125, followed in *People v. Ochoa* (2001) 26 Cal.4th 398, 437-438.)

[Petitioner] claims the prior crimes evidence had "immense prejudice," but his claim is largely predicated on the argument – already rejected – that the evidence had no probative value and was inadmissible character evidence showing only a propensity for violence. We have concluded already that the evidence had some relevance in proving [petitioner] did not act in self-defense when he shot Hammond and Stokes and therefore it falls to [petitioner] [to] show this probative value was substantially outweighed by the substantial danger the evidence would create undue prejudice. [Petitioner] has not done so.

"Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1008.) "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Id.* at p. 1009.)

[Petitioner] has failed to show any such prejudicial effect from the prior crimes evidence in this case. The circumstances of the 1992 and 1995 shootings were not particularly inflammatory; indeed, they were less so than the circumstances of the present case, because no one died in either of those shootings. As for the suggestion the jury was likely to use the prior shootings merely to infer a propensity for violence, any such improper use was precluded by the limiting instruction the jury was given before the rebuttal witnesses testified, which we presume the jury followed. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 1014.) On the record before us, we find no abuse of discretion in the

9

trial court's balancing of the probative value of the prior crimes evidence against its potential prejudicial effect.

[This conclusion necessarily disposes of [petitioner]'s assertion that the admission of evidence on the 1992 and 1995 shootings created a fundamentally unfair trial in violation of the Fifth and Fourteenth Amendments to the United States Constitution.  Because the probative value of the prior crimes evidence was not substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice, [petitioner] was not denied due process by the admission of the evidence.][3]

C

Evidence Code section 1103

Finally, we turn to [petitioner]'s invocation of Evidence Code section 1103 (which the People fail to address at all).  [Petitioner] contends "Evidence Code section 1103 specifically excludes evidence of the character of a criminal defendant for violence unless the defendant has introduced character evidence of violence for the victim."  This is a misreading of that statute.

Subdivision (a) of section 1103 allows a criminal defendant to offer evidence of the victim's character to prove conduct in conformity with that character, thus avoiding the general bar on character evidence in Evidence Code section 1101, subdivision (a).  Subdivision (b) of section 1103 then provides that "evidence of the defendant's character for violence or trail of character for violence (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) is not made inadmissible by Section 1101 if the evidence is offered by the prosecution to prove conduct of the defendant in conformity with the character or trait of character and is offered after evidence that the victim had a character for violence or a trait of character tending to show violence has been adduced by the defendant under paragraph (1) of subdivision (a)."

The People never sought to admit the evidence of the shootings in 1992 and 1995 under Evidence Code section 1103, and the trial court never admitted the evidence under that statute.  Instead, as explained above, the People offered the evidence, and the trial court admitted the evidence, under subdivision (b) of Evidence Code section 1101, as specific act evidence tending to prove [petitioner]'s intent and disprove his claim of self-defense.  Because the trial court did not admit the evidence under Evidence Code section 1103, we need say nothing more about that statute.  For the reasons set forth above, the evidence was properly admitted under Evidence Code section 1101, subdivision (b).

People v. Howard, slip op. at 10-18.

---

[3] On March 10, 2003, the California Court of Appeal, Third Appellate District, filed an amended opinion modifying, though not altering the judgment of, its February 20, 2003 opinion. See LD 2.

1          B.      Discussion

2                  In Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit

3  found there is no clearly established Federal law that prohibits erroneous admission of evidence.

4  In reaching this decision, the court stated as follows:

5                  Under AEDPA, even clearly erroneous admissions of evidence that render
           a trial fundamentally unfair may not permit the grant of federal habeas corpus
6          relief if not forbidden by "clearly established Federal law," as laid out by the
           Supreme Court.  28 U.S.C. § 2254(d).  In cases where the Supreme Court has not
7          adequately addressed a claim, this court cannot use its own precedent to find a
           state court ruling unreasonable. [Carey v. Musladin, 549 U.S. 70, 77 (2006).]

8
                  The Supreme Court has made very few rulings regarding the admission of
9          evidence as a violation of due process. Although the Court has been clear that a
           writ should be issued when constitutional errors have rendered the trial
10         fundamentally unfair, [see Williams v. Taylor, 529 U.S. 362, 375 (2005),] it has
           not yet made a clear ruling that admission of irrelevant or overtly prejudicial
11         evidence constitutes a due process violation sufficient to warrant issuance of the
           writ.  Absent such "clearly established Federal law," we cannot conclude that the
12         state court's ruling was an "unreasonable application." [Carey v. Musladin, 549
           U.S. at 77.]  Under the strict standards of AEDPA, we are therefore without
13         power to issue the writ on the basis of Holley's [admission] claims.

14                 The Supreme Court has declined to hold that evidence of other crimes or bad acts

15 "so infused the trial with unfairness as to deny due process of law."  Estelle v. McGuire, 502

16 U.S. 62, 75, n.5 (1991) (noting that the Court "express[ed] no opinion on whether a state law

17 would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show

18 propensity to commit a charged crime").  The Court has also left open the question of whether

19 the admission of propensity evidence violates due process.  Id.  Because the Supreme Court has

20 declined to address the issue, the Ninth Circuit has repeatedly held that a state court's rejection

21 of a due process violation based on the admission of prior crimes or bad acts is not an

22 unreasonable application of clearly established federal law.  See, e.g., Alberni v. McDaniel, 458

23 F.3d 860, 866- 67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008)

24 (reaffirming Alberni); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008).

25                 Here, petitioner argues that his rights under the Fifth and Fourteenth Amendments

26 were violated because the prior crimes evidence was irrelevant and highly prejudicial.  Because

1   the Supreme Court has not spoken on this issue, petitioner's claim is barred by the lack of clearly

2   established federal law on this issue.  See George v. Almager, 2011 WL 1762703 (9th Cir. 2011)

3   ("Absent clear Supreme Court authority on point, even the erroneous admission of evidence

4   resulting in a fundamentally unfair trial may not allow the grant of habeas relief") (citing Holley,

5   568 F.3d at 1101).  Thus, this claim should be denied.

6   2.      Denial of Severance Motion

7               Petitioner next argues that relief is warranted because the trial court violated his

8   constitutional rights when it denied his motion to sever.

9   A.      State Court Opinion

10              The last reasoned state court rejection of this claim is the decision of the

11  California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The

12  state court of appeal addressed the claim as follows:

13              After the court consolidated the two separate cases against defendant, one
        arising from the events in October 1999 and the other arising from the events in
14      February 2000, an amended information charged defendant with assault with a
        deadly weapon, attempted mayhem, and infliction of corporal injury on a former
15      cohabitant for the events in October 1999.  FN1.  The amended information
        charged defendant with murder, attempted murder, and infliction of corporal
16      injury on a cohabitant for the events in February 2000.

17              FN 1: The People eventually dropped the attempted mayhem charge
        before trial.
18

19              On the first day of trial, defendant moved to sever the cases.  As relevant
        here, defendant contended the court should sever the cases because "[i]t is very
        likely that the jury will use these joined counts in a prejudicial fashion.  It is likely
20      the jury could be confused or misled in that improperly used the charged facts to
        show that Mr. Howard is an individual of violent temper [sic]."  [Petitioner] also
21      argued he was "being denied his right to remain silent on some charges" because
        he could not testify about the events in February 2000 without being subject to
22      examination about the events in October 1999.

23              The court found defendant had failed to show good cause for severance.
        The court explained: "Both cases involve allegations of domestic violence, and all
24      counts from both cases involve allegations of separate acts of violence.  Although
        a death is alleged in the February, 2000 incident, it is not overly inflammatory
25      relative to the alleged use of a baseball bat in the October, 1999 incident.  Neither
        case appears weak, and neither case involves the death penalty.  The fact that a
26      defense theory may be impacted does not preclude a joint trial on properly

12

consolidated charges. . . . [¶] Finally, the evidence of domestic violence is cross-admissible under Evidence Code Section 1109 if not otherwise inadmissible under Evidence Code Section 352.  The two domestic violence cases are close in time, involve separate reporting, and are not overly prejudicial or inflammatory in relation to each other.  The Court has conducted the necessary weighing process under Evidence Code Section 352 and finds that the probative value of a single trial would substantially outweigh any prejudicial effect."  Accordingly, the trial court denied the motion to sever.  [Petitioner] challenges that decision on appeal.

"An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts, . . ." (Pen. Code, § 954.)  However, "the court in which a case is triable, in the interest of justice and for good cause shown, may, in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately."  (*Ibid.*)

Where, as here, the charges in the case all allege offenses of the same class, FN2 the statutory requirements for joinder are satisfied, and the defendant can predicate error in denying a motion to sever "only on a clear showing of potential prejudice."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1030.)  We review the trial court's ruling for abuse of discretion, which we will find only if the ruling falls outside the bounds of reason.  (*Ibid.*; *People v. Osband* (1996) 13 Cal.4th 622, 666.)  "[I]n assessing whether the trial court abused its discretion in denying severance, we examine the state of the record at the time of the ruling." (*Kraft*, at p. 1032.)

FN2: [Petitioner] concedes the charges in this case "were all assaultive and of the same class."

"'The determination of prejudice is necessarily dependent on the particular circumstances of each individual case, but certain criteria have emerged to provide guidance in ruling upon and reviewing a motion to sever trial.' [Citation.]  Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be jointly tried would not be cross-admissible in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a 'weak' case has been joined with a 'strong' case, or with another 'weak' case, so that the 'spillover' effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges; and (4) any one of the charges carries the death penalty or joinder of them turns the matter into a capital case."  (*People v. Sandoval* (1992) 4 Cal.4th 155, 172-173.)

[Petitioner]'s assertions of prejudice from the joint trial of the charges in this case are far from a model of clarity; nevertheless, we can discern two basic themes from his arguments.  First, defendant contends it was prejudicial to jointly try all of the charges because the evidence on the murder and attempted charges from February 2000 and the evidence on the charges from October 1999 were not cross-admissible and the joint trial of all these violent offenses would have led to an "overall confusion and inflammation of emotion on all counts."  Second, defendant contends the joint trial of all the charges forced him to concede guilt on the charges from October 1999 because if he had asserted his available defenses to the 1999 charges – that Smith was not his cohabitant and that he acted in self-

defense against her brother – the jury might have categorically rejected his defenses to *all* the charges, including the murder and attempted murder charges from the shootings in February 2000.

[Petitioner] appears to acknowledge the evidence of his domestic violence against Smith in October 1999 and his domestic violence against Armstrong in February 2000 would have been cross-admissible in separate trials.  (See Evid. Code, § 1109.)  He contends, however, that evidence of his crimes against Smith and her brother was not cross-admissible with evidence of the shootings of Hammond and Stokes.  Even if we agree with defendant in this regard, however, "the absence of cross-admissibility does not, by itself, demonstrate prejudice."  (*People v. Kraft*, supra, 23 Cal.4th at p. 1030.)  "Cross-admissibility of evidence in separate trials is but one of the factors the trial court must consider in determining whether potential prejudice requires severance."  (*People v. Price* (1991) 1 Cal.4th 324, 389.)

[Petitioner] contends that in addition to the lack of cross-admissibility, the evidence of the shootings "was inflammatory in regard to the 1999 charges" because "murder and attempted murder with multiple shots fired is far more serious and is likely to poison any view of other incidents."  The proper question, however, is whether "'certain of the charges [were] *unusually* likely to inflame the jury against the defendants.'"  (*People v. Sandoval*, supra, 4 Cal.4th at p. 172, italics added.)  The trial court concluded the shootings in February 2000 were "not overly inflammatory relative to the alleged use of a baseball bat in the October, 1999 incident."  We cannot say that conclusion falls outside the bounds of reason.

To the extent [petitioner] suggests he was prejudiced simply by the joint trial of multiple violent offenses, that argument "is unavailing.  Whether a defendant is tried for multiple crimes of the same class, the jury will be presented with evidence that the defendant committed multiple offenses.  This necessary concomitant of joinder is not sufficient to render the joinder unduly prejudicial.  If it were, joinder could never be permitted.  The danger to be avoided in joinder of offenses is that strong evidence of a lesser but inflammatory crime might be used to bolster a weak case on another crime. [Citation.] That danger was not present here . . . ."  (*People v. Hill* (1995) 34 Cal.App.4th 727, 735-736.)

As for [petitioner]'s assertion that he was unduly prejudiced by the joinder because the joint trial of the charges from 1999 and 2000 "forced the gambit of sacrificing any defense to all charges but the homicide/gun/attempt/gun 2000 charges,' we find no merit in that argument either.  The thrust of [petitioner]'s argument appears to be that when multiple charges are joined for trial, the defendant cannot risk contesting *all* of the charges because the jury may find the defendant's assertion of too many defenses incredible, leading them to reject *all* of his defenses.  [Petitioner] cites no authority for this novel argument, nor are we aware of any.  Even assuming [petitioner]'s fear of the effect of "too many defenses" on a jury has some basis in law or logic, the risk he identifies will be present whenever a [petitioner] is tried for multiple crimes and wants to defend against all of them.  If this risk were sufficient to render joinder unduly prejudicial, joinder could rarely, if ever, be permitted.  (Cf. *People v. Hills*, supra, 34 Cal.App.4th at p. 735.)  Thus, we conclude this argument does not support "a

14

clear showing of potential prejudice." (*People v. Kraft*, supra, 23 Cal.4th at p. 1030.)

On the record before us, the trial court's denial of [petitioner]'s motion to sever was well within the bounds of reason and therefore did not constitute an abuse of discretion.

[To the extent [petitioner] contends the denial of his motion to sever violated his right to a fair trial under the due process clause of the Fourteenth Amendment to the United States Constitution, we reject that contention also. Having looked at the evidence actually introduced at trial, "we find neither actual nor potential prejudice such as to render the trial grossly unfair and thus deny due process." (*People v. Bean* (1988) 46 Cal.3d 919, 940, 251 Cal. Rptr. 467, 760 P.2d 996.)][4]

People v. Howard, slip op. at 4-10.

     B.    Discussion

Federal habeas is available for improper consolidation of counts for trial only if the simultaneous trial actually rendered petitioner's criminal trial " 'fundamentally unfair and hence, violative of due process.'" Park v. California, 202 F.3d 1146, 1149-50 (9th Cir. 2000), quoting Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991). See also Sandoval v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2000). The requisite level of prejudice is established only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." Sandoval, 241 F.3d at 772, citing Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir. 1998).

A trial court has broad discretion in ruling on severance motions. Herd v. Kincheloe, 800 F.2d 1526, 1529 (9th Cir. 1986). The relevant factors are judicial economy and prejudice. United States v. Lewis, 787 F.2d 1318, 1320 n.3 (9th Cir.), amended 798 F.2d 1250 (9th Cir. 1986). A reviewing court must consider: (1) whether strong evidence of one count is presented with relatively weak evidence on another count; (2) whether the evidence of the other count is cross-admissible; and (3) whether the state trial court admonished the jury as to the

---

[4] This last paragraph was added in an amended opinion filed March 10, 2003. See LD 2.

1   limited use of the other crimes evidence.  See Bean v. Calderon, 163 F.3d 1073, 1084-86 (9th Cir.

2   1998).  Even if the evidence is not cross-admissible, joinder generally does not result in prejudice

3   if the evidence of each crime is simple and distinct and the jury is properly instructed so that it

4   may compartmentalize the evidence.  Id. at 1085-86; see also United States v. Johnson, 820 F.2d

5   1065, 1071 (9th Cir. 1987).

6           Petitioner bears the burden to establish unfairness rising to the level of a federal

7   due process violation.  See Park, 202 F.3d at 1149, citing McKenzie v. McCormick, 27 F.3d

8   1415, 1418 (9th Cir. 1994).  An argument that denial of severance violated the defendant's federal

9   right to due process because it violated state law is not cognizable because a violation of state

10  law, standing alone, does not establish a due process violation cognizable as a basis for relief in a

11  section 2254 action.  See Featherstone, 948 F.2d at 1503.  To obtain federal habeas relief

12  petitioner must establish both that the joinder of the offenses in a single trial was an abuse of the

13  trial court's discretion and that the joinder violated his federal constitutional rights.  See Lucero v.

14  Kerby, 133 F.3d 1299, 1313-14 (10th Cir. 1998).  Misjoinder rises to the level of a constitutional

15  violation only if it results in prejudice so great as to deny a defendant his right to a fair trial.  See

16  Featherstone, 948 F.2d at 1503; Lucero, 133 F.3d at 1314.

17          To show error, petitioner argues that the evidence of the 2000 murder and

18  attempted murder charges would not have been cross-admissible with the 1999 charges and that

19  the jurors were not advised to limit their consideration of the evidence related to each charge.

20  The court has examined the record and does not find error.  There is no dispute that evidence of

21  the domestic violence charges was cross-admissible.  Even assuming evidence of the murder and

22  attempted murder charges were not cross-admissible, a violation based on the lack of cross-

23  admissibility of evidence, alone, does not warrant habeas relief.  See Park 202 F.3d at 1149-50.

24  Here, the court finds that the evidence on all counts against petitioner was relatively strong based

25  on eyewitness accounts and petitioner's own admissions.  Under these circumstances, the trial

26  court did not abuse its discretion in denying petitioner's severance motion.

1    Even assuming arguendo that the state trial court erred in denying petitioner's

2    motion for severance, petitioner has failed to show that he was prejudiced by joinder of the

3    charges against him.  Contrary to petitioner's assertion, this case is unlike <u>Bean</u> where not only

4    were the joined counts not cross-admissible, but the State repeatedly encouraged the jury to

5    consider the two sets of charges in concert.  <u>See</u> 163 F.3d at 1084-85.  Here, the crimes charged

6    against petitioner were clearly distinct and the jury should have been easily able to distinguish the

7    evidence introduced with respect to one charge from that introduced in the others.  There is no

8    evidence that the jury was confused or was unable to consider separately the evidence which

9    pertained to each charged crime.  <u>See</u> <u>Johnson</u>, 820 F.2d at 1071.  The evidence supporting

10   petitioner's convictions was not unequal, none of the offenses was significantly more

11   inflammatory than the other and there was sufficient evidence to support a conviction of each

12   offense without use of evidence introduced with respect to the other.  Further, petitioner's jury

13   was instructed to consider each count separately.  CT at 243.  Petitioner, however, argues that the

14   evidence of each crime was not "simple and distinct," as evidenced by his conviction on all

15   counts.  <u>See</u> Am. Pet. at 36.  This argument is unavailing.  The fact that he was convicted on all

16   counts does not demonstrate jury confusion so much as it demonstrates that the jury found

17   petitioner guilty upon proper consideration of the evidence, including the testimonies of multiple

18   eyewitnesses, petitioner's own admissions and the evident lack of weight given to petitioner's

19   self-defense theory.  Under these circumstances here, consolidation of the 1999 charges with the

20   2000 charges against petitioner did not have a substantial and injurious effect or influence in

21   determining the jury's verdict.  Accordingly, petitioner is not entitled to relief on this claim.

22    Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United

23   States District Courts, "[t]he district court must issue or a deny a certificate of appealability when

24   it enters a final order adverse to the applicant."  Rule 11, 28 U.S.C. foll. § 2254.  A certificate of

25   appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial

26   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either

17

1   issue a certificate of appealability indicating which issues satisfy the required showing or must

2   state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).  For the reasons

3   set forth in these findings and recommendations, petitioner has not made a substantial showing of

4   the denial of a constitutional right.  Accordingly, no certificate of appealability should issue.

5            In accordance with the above, IT IS HEREBY RECOMMENDED that:

6            1.  Petitioner's application for a writ of habeas corpus be denied; and

7            2.  The district court decline to issue a certificate of appealability.

8            These findings and recommendations are submitted to the United States District

9   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

10  days after being served with these findings and recommendations, any party may file written

11  objections with the court and serve a copy on all parties.  Such a document should be captioned

12  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

13  objections shall be filed and served within fourteen days after service of the objections.  The

14  parties are advised that failure to file objections within the specified time may waive the right to

15  appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16  DATED: August 8, 2011.


18                          UNITED STATES MAGISTRATE JUDGE

20  /014;howa0149.157